UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA S. SMITH,

          Plaintiff,               Civil Action No. 13-cv-13186

          v.                    Honorable Patrick J. Duggan

COMMISSIONER OF
SOCIAL SECURITY,

          Defendant.

_____/

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND (ECF No. 14), DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 16), AND REMANDING THE ACTION FOR FURTHER CONSIDERATION PURSUANT TO SENTENCE FOUR

Plaintiff Rebecca S. Smith seeks judicial review of a final decision of Defendant Commissioner of Social Security denying her application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. (ECF No. 1.) Defendant determined that Plaintiff was not disabled within the meaning of the Social Security Act because she could perform her past relevant work as a data entry clerk as that position is generally performed in the national economy.

Presently before the Court are Plaintiff's Motion for Remand and Defendant's Motion for Summary Judgment. (ECF Nos. 14, 16.) For the reasons set forth herein, the Court grants Plaintiff's Motion, denies Defendant's Motion,

and remands the decision of the Commissioner of Social Security pursuant to Sentence Four of 42 U.S.C. § 405(g).

## I.      BACKGROUND

### A.      Procedural History

In December 2011, Plaintiff applied for disability insurance benefits and supplemental security income asserting that she became unable to work on January 1, 2007 due to degenerative disc disease, disc protrusion, lumbar radiculopathy, and spondylolisthesis.  (Pg ID 207, 213.)  The Commissioner initially denied Plaintiff's disability applications on March 15, 2012.  (Pg ID 139, 149.)  Plaintiff then requested an administrative hearing, and on November 27, 2012, she appeared with counsel before Administrative Law Judge Kevin Fallis ("ALJ"), who considered her case *de novo*.  Stephanie Lorey, a vocational expert ("VE"), also testified at the hearing.

On February 22, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act.  (Pg ID 44-54.)  The ALJ's decision became the final decision of the Commissioner on May 21, 2013, when the Social Security Administration's Appeals Council denied Plaintiff's request for review. (Pg ID 30.)  Plaintiff filed the present action seeking judicial review of the Commissioner's unfavorable decision on July 24, 2013.

### B.      Factual Background

Plaintiff was fifty years old as of the alleged onset date of her disability and fifty-six years old at the time of her hearing with the ALJ. (Pg ID 46.)  Plaintiff completed her education through the eighth grade.  (Pg ID 67.)

Plaintiff's past relevant work experience consists of a position she held at a window installation company she owned with her husband.  (Pg ID 67, 82.)  In this position, Plaintiff performed primarily data entry work, transcribing information from a book to a computer.  (Pg ID 68.)  Plaintiff did, however, occasionally bring her husband materials needed to a particular job and assist with site clean-up upon completion of a job.  (Pg ID 68.)  She last worked in 2008.  (Pg ID 68.)

Plaintiff testified that she suffers from chronic pain in her back as a result of various degenerative changes to her lumbar spine.  (Pg ID 69.)  Plaintiff testified about sharp pains that radiate down her legs.  (Pg ID 75.)  She also has issues with her right shoulder and carpal tunnel syndrome on her right side.  (Pg ID 69, 78.)  Plaintiff's prescription medications at the time of the hearing included Vicodin, Tramadol, Naproxen, and Cymbalta.  (Pg ID 70.)   On good days, these medications, coupled with various steroid injections Plaintiff received, reduced Plaintiff's pain to a four or five on a severity scale of one to ten.  (Pg ID 69.)  Plaintiff received the steroid injections approximately every four months and testified that they "help about 25 percent."  (Pg ID 77.)

According to Plaintiff, her chronic back pain renders her incapable of activities such as folding laundry and vacuuming. (Pg ID 70; *see also* Pg ID 73-74 (Plaintiff describing her other limitations with daily chores and explaining her need to take frequent breaks due to pain).) To relieve her back pain, Plaintiff paces frequently, including throughout the night. (Pg ID 71.)

Plaintiff receives help with household chores from her husband and daughter. (Pg ID 73.) Plaintiff's daughter does almost all of Plaintiff's grocery shopping, although Plaintiff will go to the store on occasion to purchase perishables. (Pg ID 74.) Due to her shoulder pain, Plaintiff indicated she is incapable of overhead reaching. (Pg ID 78.) Plaintiff explained to the ALJ that she lives in a two-story house but that only goes upstairs when it is time to retire for the evening. (Pg ID 80.) She has fallen down the stairs on a few occasions. (Pg ID 76-77.)

## II.    THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act (hereinafter, the "Act"), disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

4

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The determination of whether an individual is disabled involves application of the Social Security Administration's five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). The five-step process is as follows:

1. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i).

2. At the second step, the ALJ considers whether the claimant has a severe medically determinable physical or mental impairment that meets the duration requirement of the regulations and which significantly limits the claimant's ability to do basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii) and (c).

3. At the third step, the ALJ again considers the medical severity of the claimant's impairment to determine whether the impairment meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment meets any Listing, he or she is determined to be disabled regardless of other factors. *Id.*

4. At the fourth step, the ALJ assesses the claimant's residual functional capacity and past relevant work to determine whether the claimant can perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv).

5. At the fifth step, the ALJ considers the claimant's residual functional capacity, age, education, and past work experience to see if he can do other work. 20 C.F.R. § 404.1420(a)(4)(v). If there is no such work that the claimant can perform, the ALJ must find that he or she is disabled. *Id.*

If an ALJ determines that the claimant is or is not disabled at a step of the evaluation process, the evaluation does not proceed. *Id.* "The burden of proof is on the claimant through the first four steps . . . If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 1, 2007.  (Pg ID 46.)  At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, carpal tunnel syndrome on the right, obesity, obstructive sleep apnea, and degenerative joint disease of the right shoulder.  (Pg ID 47.)  Next, the ALJ concluded that none of these impairments, alone or in combination, met or medically equaled a listed impairment. (Pg ID 47-48.)  Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift up to 20 pounds occasionally and lift/carry up to 10 pounds frequently.  The claimant can stand/walk for about 6 hours and sit for up to 6 hours in an 8-hour workday, with normal breaks.  The claimant requires the option to sit or stand alternatively, provided this person is not off-task more than 10% of the work period. The claimant can never climb ladders, ropes, or scaffolds.   The claimant can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.  The claimant can never perform overhead reaching on the right.   The claimant can frequently perform handing and fingering on the right.   The claimant must avoid concentrated exposure to excessive vibration.   The claimant must avoid all exposure to unprotected heights.

(Pg ID 48.)  At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a data entry clerk (semiskilled/sedentary) as generally performed, but not as actually performed.[1]  (Pg ID 53.)  The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of his decision.

## III.   STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

A district court's review of an ALJ's factual findings involves application of the substantial evidence standard.  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted).  If the

---

[1] As such, the ALJ never reached the fifth and final step.  However, at the hearing, the VE testified that Plaintiff would be able to perform other jobs in the national economy.  (Pg ID 101-03.)

7

Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts") (internal quotation marks omitted).

When reviewing the Commissioner's factual findings for substantial evidence, courts are limited to examining the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992) (explaining that courts reviewing the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including evidence which might subtract from its weight). Federal courts do "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

The other line of judicial inquiry – reviewing for correctness of the ALJ's legal analysis – may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*,

8

582 F.3d 647, 651 (6th Cir. 2009).  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Id.* (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007) and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)); *cf. Buchanan v. Apfel*, 249 F.3d 485, 492 (6th Cir. 2001) (the Commissioner has a clear, nondiscretionary duty to comply with Social Security regulations).

## IV.   ANALYSIS

In her motion, Plaintiff asks this Court to remand the case pursuant to Sentence Four of 42 U.S.C. § 405(g).  Plaintiff, believing that "all essential factual issues have been resolved and [that] the record adequately establishes [Plaintiff's] entitlement to benefits," hopes that the Court will remand for an award of benefits. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). Alternatively, Plaintiff seeks remand so that the Commissioner will reevaluate her case using the criteria set forth in the regulations implementing the Act.  In support of this relief, Plaintiff argues that the ALJ's decision failed to employ the proper legal standards and is not supported by substantial evidence with regard to the following components of his decision: (1) the weight accorded to the medical opinion evidence; (2) the evaluation of Plaintiff's credibility; (3) the formulation of

9

Plaintiff's RFC assessment; and (4) the conclusion that Plaintiff could perform her past relevant work at Step Four.[2]  Because the Court agrees with the first two arguments, the Court is unable to conclude that affirmance is proper.  As such, the Court remands the entire matter for further development.

## A.       Weight Accorded to Pertinent Medical Opinions

Plaintiff argues that the ALJ "erroneously rejected the treating source medical opinions."  (Pl.'s Reply 4, ECF No. 17.)  Plaintiff also questions the weight assigned to the "outdated opinion of a State Disability, non-evaluating doctor."  (Pl.'s Br. 12.)  The Court addresses these arguments *seriatim*.

### 1.       *The Treating Physician Rule*

"In assessing the medical evidence supplied in support of a claim, there are certain governing standards to which an ALJ must adhere."  *Rogers*, 486 F.3d at 242.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Id.* (citations omitted).  An ALJ must accord a treating physician's opinion controlling weight if it is "well-supported by clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record[.]"  20 C.F.R. § 404.1527(c)(2).  If the opinion of a treating source is not afforded controlling weight, an ALJ must

---

[2] The Court has rearranged the order of Plaintiff's arguments.

apply certain factors in determining what weight to give the opinion, including the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source. *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). "[I]n all cases there remains a presumption, albeit a rebuttable one, that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding." *Rogers*, 486 F.3d at 242 (citing SSR 96-2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")).

Although treating source opinions are generally given great deference, medical source opinions on issues reserved to the Commissioner – such as the ultimate issue of whether a claimant is disabled – "are not medical opinions[.]"  20 C.F.R. § 404.1527(d).  Thus, "[a] statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled."  20 C.F.R. § 404.1527(d)(1).  No "special significance" will be given "to the source of an opinion on issues reserved to the Commissioner," 20 C.F.R. § 404.1527(d)(3); although, such opinions "must never be ignored," SSR 96-5p, 1996 WL 374183, at *1.

The treating physician rule also mandates application of a procedural safeguard designed to provide both claimants and reviewing courts with adequate information to understand the basis of the ALJ's decision regarding the weight accorded to a treating physician's opinions.  20 C.F.R. § 404.1527(d)(2).  Thus, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 1996 WL 374188, at *5.

In the case at bar, the ALJ afforded "little weight" to the medical opinions of Robert Bouvier, M.D., one of Plaintiff's primary care physicians, because the ALJ found Dr. Bouvier's opinion that Plaintiff would never be able to return to work "inconsistent with the physician's own treating notes that indicate only mild findings on objective tests and physical examination."  (Pg ID 52.)  Plaintiff contends that the ALJ did not give proper weight to Dr. Bouvier's opinion.  She further contends that the ALJ failed to adhere to the procedural safeguard requiring the agency to clearly articulate its reasoning for declining to give a treating source opinion controlling weight because the ALJ failed to address the inconsistencies between Dr. Bouvier's opinion and the other evidence of record.  Upon a careful review of the record, the Court disagrees.

12

Dr. Bouvier commenced his treatment relationship with Plaintiff in February 2012. In a medical examination report dated November 7, 2012, Dr. Bouvier indicated that Plaintiff's condition was deteriorating and that she was "never" expected to return to work. (Pg ID 350.) Plaintiff had no mental limitations and although Plaintiff had physical limitations, the physician did not identify them.[3] (Pg ID 350.) Notwithstanding these unidentified physical limitations, Dr. Bouvier's report notes that Plaintiff was able to meet her needs in the home although she "sometimes" required assistance with tasks such as shopping, cleaning, and cooking. (Pg ID 350.) Nothing in the treatment note suggests that Dr. Bouvier recommended any physical limitations to Plaintiff.

In correspondence also dated November 7, 2012, Dr. Bouvier wrote that Plaintiff "was 'permanently disabled' from chronic pain syndrome, metabolic syndrome, hypertension, overweight, insomnia from pain, sleep apnea, and low back pain with radiculopathy." (Pg ID 52 (quoting Pg ID 474).) Dr. Bouvier noted that Plaintiff's condition was not expected to improve and further indicated that neurology, pain management, and physical therapy all agreed. (Pg ID 474.) As the ALJ explained, Dr. Bouvier did not indicate "to which portion of his

---

[3] Next to the portion of the form listing various physical limitations, Dr. Bouvier wrote "pt to do," which this Court assumes is shorthand for patient to fill in limitations. (Pg ID 350.)

13

opinion these specialties agreed." (Pg ID 52.) Further, the medical evidence of record did not include any physical therapy records. (Pg ID 52.)

The ALJ's decision clearly states that he "assigns little weight to the opinion of Dr. Bouvier regarding the limiting effect of [Plaintiff's] impairments, as it is inconsistent with the physician's own treating notes that indicate only mild findings on objective tests and physical examination." (Pg ID 52.) In other words, the ALJ found Dr. Bouvier's conclusions regarding the extent of Plaintiff's limitations unsubstantiated by "clinical and laboratory diagnostic techniques[.]" 20 C.F.R. § 404.1527(c)(2). The ALJ also specifically cited treatment notes reporting that Plaintiff was generally able to meet her needs in the home and that she only occasionally required assistance with activities of daily living. (Pg ID 52.) Further, the ALJ found significant that "treatment notes from [Plaintiff's] neurologist and neurosurgeon do not indicate that [she] had any significant functional limitations." (Pg ID 52.)

In sum, the ALJ noted the length of the treatment relationship (beginning in February of 2012), the lack of objective medical evidence in support of Dr. Bouvier's opinion that Plaintiff was disabled, the inconsistency of this opinion with other treatment records, and, at least impliedly, noted that Dr. Bouvier's specialty was in primary care. These explicit findings comply with the requirements of 20 C.F.R. § 404.1527(c) and SSR 96-2p and, therefore, are

14

supported by substantial evidence. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) ("[T]he ALJ is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.")

Although the Court finds no error with respect to the ALJ's treatment of Dr. Bouvier's opinion, the Court is concerned by the ALJ's failure to address the opinions of two other physicians. Although the ALJ discussed the treatment records from Kavitha Reddy, M.D., a spine specialist, and Lisa Guyot, M.D., a neurosurgeon who first examined Plaintiff on October 25, 2012, he failed to address their opinions regarding the diminished effectiveness of the epidural injections.[4]

The ALJ's opinion seems to downplay the significance of Dr. Reddy's opinion regarding Plaintiff's need for surgery as he did not mention notes from a December 18, 2012 treatment record in which Dr. Reddy wrote "I would agree with the Primary care physician with referral to a Neurosurgeon to consider Low back surgery as [Plaintiff] has difficulty functioning." (Pg ID 421). Because Dr. Reddy began treating Plaintiff sometime around July 2008 – much earlier than Dr. Bouvier – it strikes this Court as odd that the ALJ would not address this opinion

---

[4] Dr. Guyot examined Plaintiff twice before scheduling surgery and would likely be more appropriately considered an examining physician as opposed to a treating physician. The Court, therefore, focuses on Dr. Reddy.

pursuant to the treating physician rule, particularly since it seems to bolster Dr. Bouvier's opinions.

While the Court does not agree with Plaintiff that the ALJ summarily dismissed Dr. Bouvier's opinion, particularly as it relates to the ultimate issue of disability, the Court is hard-pressed to discern why Dr. Reddy's observations were not explicitly discussed in the ALJ's opinion denying benefits and why the ALJ failed to indicate what level of weight, if any, he gave to Dr. Reddy's opinions. In this regard, the Court concludes that the ALJ violated the treating physician rule and that remand is necessary to correct this deficiency.

## 2.    *Non-Examining Medical Sources*

Plaintiff complains of the weight assigned to the opinion of Donald Kuiper, M.D., a state agency non-examining medical source who prepared a physical RFC assessment of Plaintiff on March 8, 2012. (Pl.'s Br. 12.) In addition to the amount of weight given, Plaintiff claims error with respect to the ALJ's statement that "While the claimant continued to seek medical treatment following the State agency examiner's opinion, the medical evidence of record reveals that there was no change in the claimant's condition after the opinion was given even though she was scheduled for upcoming surgery." (Pg ID 52.)

More weight is generally given to the opinions of examining medical sources than is given to the opinions of non-examining medical sources. 20 C.F.R.

§ 416.927(d)(1).  Yet, the opinions of non-examining state agency physicians have some value and may, under appropriate circumstances, "be entitled to greater weight than the opinions of treating or examining sources."  SSR 96-6p, 1996 WL 374180, at *3; *see also* 20 C.F.R. § 404.1527(e)(2)(i) ("State agency medical [consultants and physicians] are highly qualified physicians . . . who are also experts in Social Security disability evaluation.").  One such circumstance may occur, for instance, when the "State agency medical . . . consultant or other program physician . . . opinion is based on a review of a complete case record that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  SSR 96-6p, 1996 WL 374180, at *3.

When an ALJ considers a state agency medical source opinion, the ALJ will evaluate the findings using criteria similar to that of the treating physician rule "such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the . . . consultant provides, and any other factors relevant to the weighing of the opinions."  20 C.F.R. § 404.1527(e)(2)(ii).  Where, as here, a state agency medical consultant or program physician has provided an assessment of an individual's RFC, the ALJ must consider and evaluate this assessment.  SSR 96-6p, 1996 WL 374180, at *4. Further, the ALJ must treat the RFC assessment as a medical opinion from a non-

17

examining source and must address this RFC assessment by reference to "all of the factors set out in the regulations for considering opinion evidence." *Id.*

Here, the ALJ accorded "great weight" to Dr. Kuiper's opinion that Plaintiff could perform work activity at the light exertional level, "as it is consistent with the medical evidence of record." (Pg ID 52.) Consistency is thus the only factor the ALJ discussed in explaining the weight assigned to Dr. Kuiper's opinion. The ALJ erred by not addressing "all of the factors" set forth in the regulations.

A second issue with this aspect of the ALJ's decision is that Dr. Kuiper, the state agency's non-examining medical source, offered his opinion, upon which the ALJ heavily relied, on March 8, 2012. Consequently, Dr. Kuiper did not have an opportunity to review the vast majority of treatment records generated by Plaintiff's primary care physician, Dr. Bouvier,[5] the June 16, 2012 MRI (which reflected further degenerative changes, both mild and moderate, to Plaintiff's spine as compared to a MRI conducted on March 3, 2008), (Pg ID 460-461), any treatment records from Dr. Guyot, the neurosurgeon who first examined the patient on October 25, 2012 and again on November 15, 2012, nor the various treatment records from Dr. Reddy, specifically the notes from December 18, 2012 noting that "Patient has difficulty sitting from a standing position[,]" and "I would agree with the Primary care physician with referral to a Neurosurgeon to consider Low back

---

[5] The Court finds it appropriate to once again note that Dr. Bouvier began treating Plaintiff in February 2012.

18

surgery as she has difficulty functioning[,]" (Pg ID 421).  In other words, Dr.

Kuiper's opinions were formed on the basis of an incomplete record.[6]

Although the ALJ explained his great reliance on Dr. Kuiper's opinions on

the basis that there was "no change" in Plaintiff's condition after March 8, 2012,

this conclusory remark is not supported by substantial evidence.  (Pg ID 52.)  In

fact, the June 16, 2012 MRI specifically noted various mild and moderate changes

to Plaintiff's lumbar spine as compared to a March 3, 2008 MRI.  (Pg ID 460.)  A

treatment note by Dr. Guyot, who began seeing Plaintiff in late October 2012,

corroborated this change in correspondence to Dr. Bouvier dated November 15,

2012.  (Pg ID 455.)  In addition, Plaintiff was not diagnosed with shoulder

impingement syndrome until July 24, 2012, months after Dr. Kuiper's RFC

assessment.  (Pg ID 50.)  It does not appear that the ALJ at all "considered these

facts before giving greater weight to an opinion that [was] not 'based on a review

of a complete case record.'"  *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007)

(quoting SSR 96-6p, 1996 WL 374180, at *3).  Because the ALJ did not engage in

the required analysis, the Court is unable to conclude that his decision to accord

great weight to the opinion of Dr. Kuiper was supported by substantial evidence.

---

[6] Notably, Defendant does not expend much energy defending the amount of
weight the ALJ gave to Dr. Kaipur's assessment.  In fact, Defendant does not
attempt to justify the ALJ's reliance on an opinion formed with an incomplete
medical record. (Def.'s Br. 19.)

In sum, although the ALJ justified the weight accorded to Dr. Bouvier's opinions, the Court is wary of the ALJ's decision to accord greater weight to Dr. Kuiper's opinion than to Dr. Bouvier's.  This is particularly so in light of SSR 96-6p, which provides that one circumstance in which it is proper to accord greater weight to the opinion of a non-examining state agency physician than to the opinions of treating or examining sources is when the "State agency medical . . . consultant or other program physician . . . opinion is based on a review of a *complete case record* that includes a medical report from a specialist in the individual's particular impairment which provides more detailed and comprehensive information than what was available to the individual's treating source."  SSR 96-6p, 1996 WL 374180, at *3 (emphasis added).  Because, as discussed above, Dr. Kuiper was not in possession of the complete case record at the time he rendered his opinion, the Court questions the propriety of according his opinion greater weight than the opinion of Plaintiff's treating physician.

Even if this Court were to conclude that substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to adequately justify its heavy reliance on Dr. Kuiper's March 8, 2012 opinion and failed to follow its own interpretative rulings.  *Cf. Wilson*, 378 F.3d at 544 ("Although substantial evidence otherwise supports the decision of the

Commissioner in this case, reversal is required because the agency failed to follow its own procedural regulation[.]").

## B.    Assessment of Plaintiff's Credibility

In evaluating Plaintiff's subjective complaints of pain and her testimony regarding her physical limitations, the ALJ determined that she was not entirely credible.  (Pg ID 49.)  Specifically, the ALJ was persuaded by the lack of objective medical evidence supporting her symptoms, Plaintiff's testimony regarding the effectiveness of various treatments and medications, and lapses in the treatment record.  "Whether the ALJ permissibly found [Plaintiff's] complaints not credible depends not only upon the scope of his authority in making such credibility determinations, but also upon his evaluation of the evidence on which the determinations were made."  *Rogers*, 486 F.3d at 247.

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition."  *Id.* (citations omitted).  "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007).  However, "[s]ubjective complaints of pain or other symptoms shall not alone be conclusive evidence of disability."  *Vance v. Comm'r*

*of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) (internal quotation marks and citations omitted).

The standard for evaluating subjective complaints of disabling pain is as follows. First, the ALJ must consider whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 404.1529(a). If such an impairment exists, as the ALJ determined it did in this case (Pg ID 49), the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. 20 C.F.R. § 404.1529(a). In addition to considering the objective medical evidence, the ALJ will consider the following relevant factors: the claimant's daily activities; the location, duration, frequency, and intensity of a claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; and any other measures used to relieve pain or other symptoms, such as lying on one's back for a period of time. 20 C.F.R. § 404.1529(c)(2)-(3).

It is, of course, the responsibility of the ALJ as the finder of fact to evaluate a claimant's credibility. *Vance*, 260 F. App'x at 806. "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference,

22

particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (quotation omitted) (alteration in original). "Notwithstanding that deference, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.* (internal quotation marks and citation omitted). "The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility." SSR 96-7p, 1996 WL 374186, at *4. Rather, when objective medical evidence does not substantiate a claimant's subjective complaints of pain, the ALJ "must consider all of the evidence in the case record[.]" *Id.* As the Sixth Circuit indicated in *Rogers*:

> The entire case record includes any medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record. Consistency of the various pieces of information contained in the [case] record should be scrutinized. Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect.

*Id.*, 486 F.3d at 247-48.

In the instant case, the ALJ appears to have adjudged Plaintiff less than fully credible for three reasons. First, the ALJ noted the lack of objective medical evidence supporting her symptoms although he earlier opined that "claimant's medically determinable impairments could reasonably be expected to cause the

23

alleged symptoms[.]" (Pg ID 52, 49.)  The ALJ then went on to consider the other evidence in the case record, as discussed below.

Second, the ALJ emphasized that "The claimant reported significantly decreased pain as a result of epidural injections.  She also testified that she was able to effectively manage her pain with medications."  (Pg ID 52.)  The ALJ did not, however, discuss the Plaintiff's medical records in which she stated that she felt pain relief after receipt of an injection but that the pain returned to baseline in a few days to weeks.  (Pg ID 467.)  This is significant as Plaintiff received the injections approximately every four months.  *Wyatt*, 974 F.2d at 683 (explaining that courts reviewing the Commissioner's factual findings for substantial evidence must consider the evidence in the record as a whole, including evidence which might subtract from its weight).  Nor does the ALJ appear to make much of the fact that the frequency of her visits to various doctors increased toward the end of 2012 as did her level of pain.

Further, the ALJ's characterization of Plaintiff's testimony is disingenuous. Plaintiff testified at the hearing that "I'm always in pain . . . .  With the pain medication, it helps.  I'm never at 0 or 1, it's a good day if I'm down at four or five, and that's with the pain meds, that's with the injections."  (Pg ID 69.)  The ALJ did indicate that he saw no reason the scheduled spinal fusion would not help reduce Plaintiff's pain, but neither did he appear to acknowledge that her condition

24

progressively worsened, thus precipitating her desire for (and two treating physician's recommendation of) the spinal fusion.  (Pg ID 421 (Dr. Reddy noting "I would agree with the Primary care physician with referral to a Neurosurgeon to consider Low back surgery as she has difficulty functioning.").)

Third, the ALJ noted that although Plaintiff alleged a disability onset date of January 1, 2007, "the medical evidence of record contains very few reports from prior to 2010."  (Pg ID 53.)  After acknowledging that Plaintiff did not have health insurance coverage, thereby precluding her from seeking anything other than sporadic treatment, the ALJ opined that "the claimant's lack of treatment indicates that the claimant's symptoms might not be as debilitating as she suggests."  (Pg ID 53.)  SSR 96-7p provides that an ALJ "must not draw any inferences about an individual's symptoms . . . from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide[.]"  SSR 96-7p, 1996 WL 374186, at *7.  Such explanations "may provide insight into the individual's credibility.  For example[,] . . . [t]he individual may be unable to afford treatment and may not have access to free or low-cost medical services."  *Id.* at *7-8.  It appears that the ALJ did just what SSR 96-7p prohibits in that he drew an inference about the veracity of Plaintiff's subjective complaints of pain due to her failure to seek regular treatment despite lacking health insurance. This portion of the ALJ's credibility assessment is the most problematic.

25

In conclusion, the standards applied by the ALJ prevent this Court from finding that the Commissioner's credibility decision is supported by substantial evidence. Although quite deferential to the findings of the Commissioner, the credibility standards do have limitations. "Chief among them is the requirement that all determinations be made based upon the record in its entirety." *Rogers*, 486 F.3d at 249 (citation omitted). "This requirement that determinations be made in light of the record as a whole helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Id.* While the Court does not believe that Plaintiff has discharged her burden of demonstrating an entitlement to benefits on remand, the Court's conclusion that the ALJ's erred in his credibility determination necessitates remand for further adjudication.

## V.   CONCLUSION AND ORDER

This Court finds that the ALJ erred by giving greater weight to the state agency non-examining medical opinion than to Plaintiff's treating physician when the former opinion was formed on the basis of an incomplete case record. The Court further finds that the ALJ ignored the opinion of Dr. Reddy, a treating medical source. The Court is also troubled by the ALJ's credibility assessment, primarily because he was influenced by Plaintiff's sporadic treatment prior to 2010

26

even though Plaintiff provided a very good reason for not seeking treatment during this time.  For these reasons, the Court believes remand for additional adjudication is proper.  Further, because the ALJ's assessment of Plaintiff's RFC was driven by the weight he accorded to the medical opinion evidence and by his own assessment of Plaintiff's credibility, his RFC finding and its use in concluding Plaintiff could return to her past relevant work may also need to be reviewed on remand.

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Remand (ECF No. 14) is **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment (ECF No. 16) is **DENIED**;

**IT IS FURTHER ORDERED** that the case is **REMANDED** to the Commission for reconsideration pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Opinion and Order.

Dated: July 21, 2014

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:

**John M. Brissette, Esq.**
**Elizabeth J. Larin, AUSA**
**Jessie Wang-Grimm, Esq.**

27